FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 JUL -1 PM 2:23

CLERK _L. Fletcher_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

STEFAN IONESCU,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        CV 309-089
                                   )
WALT WELLS, Warden, et al.,        )
                                   )
            Defendants.            )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

At the time of the events giving rise to the above-captioned case brought pursuant to

Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971),[1] Plaintiff was an

inmate at McRae Correctional Facility ("MCF") in McRae, Georgia.[2,3] Although Plaintiff

failed to file a response to Defendants' first motion for summary judgment, the Court

---

[1] Plaintiff brought the instant case pursuant to 42 U.S.C. § 1983. (See doc. no. 7.) However, Plaintiff's reliance upon § 1983 is inapposite because § 1983 authorizes claims alleging the deprivation of constitutional rights by persons acting under color of *state* law. Here, none of the Defendants were acting under color of state law. Simply put, Plaintiff "is unable to show that any of the defendants were acting under color of state law for the simple reason that maintaining custody of *federal* prisoners is neither a power 'possessed by virtue of *state* law' nor one that has been 'traditionally exclusively reserved to the *state*.' The authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government. Therefore, [Plaintiff's] § 1983 claims are not viable." Sarro v. Cornell Corr., Inc., 248 F. Supp.2d 52, 64 (D.R.I. 2003). Accordingly, the Court will construe Plaintiff's complaint broadly as an attempt to bring claims under Bivens.

[2] MCF is a private correctional facility operated by the Corrections Corporation of America under contract with the Federal Bureau of Prisons ("BOP").

[3] Plaintiff is currently incarcerated at FCI Allenwood in White Deer, Pennsylvania.

determined that the motion failed to address whether Defendant Cameron is entitled to summary judgment based on Plaintiff's allegation that Defendant Cameron retaliated against him by issuing him a false disciplinary report ("DR") for improper telephone use. (See doc. no. 21.) Therefore, the Court ordered Defendants to file a supplemental brief addressing this specific issue. (Doc. no. 24.) In the same Order, the Court ruled that Plaintiff would have fourteen days from the filing of Defendants' brief to file his own brief in response. (Id.) Defendants responded by filing their "Supplemental Motion for Summary Judgment" on May 31, 2011. (Doc. no. 27.) Plaintiff did not respond.

Thus, the matter is now before the Court on Defendants' first motion for summary judgment, as well as their "Supplemental Motion for Summary Judgement." Because Plaintiff has not filed a response to either of Defendants' motions, the Court deems both motions unopposed.[4] See Loc. R. 7.5. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' first motion for summary judgment (doc. no. 21), as well as their "Supplemental Motion for Summary Judgment" (doc. no. 27), be **GRANTED**, that

---

[4]The Clerk has given Plaintiff notice of Defendants' motions for summary judgment, has apprised him of his right to file affidavits or other materials in opposition, and has informed him of the consequences of failing to respond. (Doc. nos. 22, 28.) Moreover, after noting that Plaintiff had not responded to Defendants' first motion for summary judgment, the Court entered an order instructing him about the effect of failing to respond and giving him additional time to prepare a response. (Doc. no. 23.) Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Additionally, as stated, supra, Plaintiff was made aware of his right to file a brief in response to Defendants' "Supplemental Motion for Summary Judgment" in the Court's May 16th Order. (Doc. no. 24.) Of course, the Court acknowledges that the mere fact that the instant motions are unopposed does not entitle the Court to grant the motions without considering the merits. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

2

an appropriate final judgment be **ENTERED** in favor of all Defendants, and that this civil action be **CLOSED**.

## I. STATEMENT OF FACTS

On January 28, 2009, a group demonstration was held in the cafeteria of MCF by inmates participating in the Kosher meal plan which is provided to Jewish and Muslim inmates who request special diet considerations. (Doc. no. 21, p. 7.) After arriving in the cafeteria and scanning their meal cards, the inmates using the Kosher meal plan refused to accept their meals- with the exception of one inmate who is not Plaintiff. (Id.) Although Plaintiff was not on the Kosher meal plan at the time of the demonstration, he later admitted that he had failed to surrender his Kosher meal card when he was switched to the regular meal plan. (Id., Carey Aff. ¶ 3.) Thus, Plaintiff's presence at the group demonstration was verified by the scan of his Kosher meal card. (Doc. no. 21, p. 7.) Thereafter, Plaintiff was charged with engaging in/ encouraging the Kosher meal demonstration at MCF. (Id., Carey Aff. ¶¶ 4-5.)

Plaintiff states that Defendant Smith, a Lieutenant at MCF, provided him with notice of the charge on February 24, 2009, and Defendant M. Brock, a case manager at MCF, advised him of his rights prior to his hearing before the Disciplinary Hearing Officer ("DHO"), Defendant Carey on March 9, 2009. (Doc. no. 7, ¶¶ 6-8, 21-22.) Defendant Carey found Plaintiff guilty of engaging in/ encouraging the Kosher meal demonstration. (Doc. no. 21, Carey Aff. ¶ 4.) As a result, Plaintiff was disallowed twenty-seven days of good conduct time ("GCT"), placed in disciplinary segregation for thirty days, and recommended for transfer. (Id.)

Plaintiff, who states that he is a practicing Sunni Muslim, alleges in his amended complaint that his equal protection rights were violated because he was "singled out" and issued the DR falsely accusing him of taking part in the Kosher meal demonstration out of "religious discrimination and persecution." (Doc. no. 7, ¶¶ 17, 19, 25.) Defendants provide that the demonstration was not a religious activity, and that Plaintiff was sanctioned based on an independent factual basis- not based on his religion, nor out of retaliation. (Doc. no. 21, Carey Aff. ¶ 5.) Plaintiff alleges that Defendant Carey lied by saying that Plaintiff told him that Plaintiff still had his Kosher meal card, as well as his regular meal card, at the time of the demonstration. (Doc. no. 7, ¶ 27.) Thus, Plaintiff claims that Defendants Smith, M. Brock, and Carey knew that Plaintiff could not have participated in the group demonstration because he was not using the Kosher meal card at the time. (Id. ¶ 25.)

Plaintiff further alleges that, while he was in the Segregation Housing Unit ("SHU") following the DHO hearing, Defendant Cameron, a case manger at MCF, retaliated against him for attempting to obtain grievance forms by refusing him access to those forms and by issuing a DR to Plaintiff for improper telephone use. (Id. ¶¶ 12, 28-30.) Defendants state that Defendant Cameron did not deny Plaintiff access to grievance forms because, as a case manager, she was not a person who could distribute such forms. (Doc. no. 27, pp. 3-4; Cameron Aff. ¶ 8.) Defendants also provide that Plaintiff was given a DR for improper telephone use because Plaintiff exceeded the two calls per month that, as a prisoner being held in SHU under Administrative Detention, he was allowed to make per facility policy. (Doc. no. 27, pp. 2-4; Cameron Aff. ¶ 4.) Defendants state that the DR was issued only because Plaintiff violated policy and not out of retaliation. (Doc. no. 27, pp. 2-4.)

4

Finally, Plaintiff alleges that his due process rights were violated because he was not allowed to use the grievance procedure to appeal the finding by Defendant Carey that Plaintiff participated in the Kosher meal demonstration.[5] (Doc. no. 7, ¶¶ 32, 37.) Plaintiff claims that Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton "[used] retaliation and [retaliatory tactics] . . . to deny . . . Plaintiff the right to the [a]dministrative [grievance procedure]." (Id. ¶ 40.) Plaintiff also claims that Defendants Yancy, Carey, Smith and Romero have a practice of "hearing false charges against inmates knowing they are false." (Id. ¶ 42.)

For relief, Plaintiff seeks a declaratory judgment from the Court that the disciplinary charges filed against him were false and that his due process rights were violated. (Id. at 13.) Plaintiff also seeks an injunction ordering Defendant Wells to allow Plaintiff to exhaust his administrative remedies and be given a new hearing, or to dismiss the charges against Plaintiff and reinstate his privileges.[6] Finally, Plaintiff seeks both compensatory and punitive damages against Defendants M. Brock, Mrs. Brock, Smith, Yancy and Romero, as well only punitive damages against Defendants Jordan, Cameron, Thompson and Singleton. (Id.)

---

[5]The Court is aware that Plaintiff had also named as Defendants the United States of America, the BOP, Eric H. Holder, David W. Ogden, Thomas J. Perrelli, MCF, and R. Scott Dodrill. (See doc. no. 7.) Plaintiff claimed these Defendants had deprived him of access to the administrative grievance procedure. However, these defendants were dismissed because they had not been timely served. (Doc. no. 17.) Thus, the Court will focus on the facts and claims related to the remaining Defendants.

[6]Plaintiff also sought to have the requested injunction enforced against several of the Defendants who have been dismissed due to failure to timely effect service upon them. (See doc. no. 7, p. 13; doc. no. 17.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot

---

[7]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.    Plaintiff's Equal Protection Claim

Plaintiff alleges that his equal protection rights were violated when he was "singled out" because of his religious beliefs and given a false DR for engaging in/ encouraging the Kosher meal demonstration which eventually lead to his losing twenty-seven days of GCT. (Doc. no. 7, ¶¶ 17, 19, 25; doc. no. 21, Carey Aff. ¶ 4.) As a result, Plaintiff seeks compensatory and punitive damages from Defendants Smith, M. Brock, and Carey- the only Defendants that Plaintiff names in connection with this claim. (Doc. no. 7, ¶¶ 21-22, 27; doc. no. 21, Carey Aff. ¶ 3.)

To establish a violation of the Equal Protection Clause, a prisoner must show: (1)

7

that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Additionally, to succeed on a claim made pursuant to the Equal Protection Clause, Plaintiff must demonstrate the existence of discriminatory intent; the arbitrary application of prison rules without discriminatory intent is insufficient to show a violation of the Equal Protection Clause. See Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir.1993) (requiring plaintiff to demonstrate that challenged action was motivated by an intent to discriminate in order to establish equal protection violation).

Here, Plaintiff does not meet these criteria. Because this case is before the Court on Defendants' properly supported motions for summary judgment, Plaintiff bears the burden of producing some evidence to show that he was treated differently than other "similarly situated" inmates based on his religion. Here, Plaintiff presents nothing more than the allegation in his amended complaint that, because he is a practicing Sunni Muslim, he was "singled out and personally charged with an incident report" accusing him of engaging in/ encouraging the Kosher meal demonstration. (Doc. no. 7, ¶¶ 19-20.) Thus, Plaintiff fails to provide any evidence of his alleged disparate treatment due to his religion. On the other hand, Defendant Carey states in his sworn affidavit that Plaintiff was found guilty of participating in the Kosher meal demonstration- which was not a religious activity- based on independent evidence and Plaintiff's own admission of retaining his old Kosher meal card. (Doc. no. 21, Carey Aff. ¶¶ 3-5.) Therefore, Plaintiff has failed to establish that he was treated differently from "similarly situated" inmates, much less that he was discriminated

against based upon his religion. Thus, Defendants Smith, M. Brock, and Carey are entitled to judgment as a matter of law regarding Plaintiff's allegation that his equal protection rights were violated.

### C.     Plaintiff's Retaliation Claims

Plaintiff also alleges that Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton used "retaliation and retaliatory tactics" to intentionally deny Plaintiff access to the administrative grievance procedure. Plaintiff further claims that Defendant Cameron retaliated against him for attempting to obtain grievance forms while in the SHU by denying him access to those forms, and by issuing a DR to Plaintiff for improper telephone use.

The First Amendment prohibits prison officials from retaliating against inmates for filing lawsuits or administrative grievances, or for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Nor may prison officials burden an inmate's First Amendment rights "with practices that are not reasonably related to legitimate penological objectives" or "act with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (per curiam) (discussing alleged violation of First Amendment right of access to the courts) (citations omitted).[8]  Where a plaintiff has failed to establish a causal connection between his protected conduct and the alleged retaliatory action, summary judgment for the

---

[8]The Court properly relies on cases brought pursuant to 42 U.S.C. § 1983 because the Eleventh Circuit has held that § 1983 law generally applies to Bivens actions as well "[b]ecause of the similarity in the causes of action . . . ." Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) (citing Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995)).

defendant is proper. Farrow, 320 F.3d at 1248-49. Stated another way, "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Id. at 1248 (citing Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam)). The Eleventh Circuit has ruled that "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment." Harris, 65 F.3d at 917.[9]

Moreover, the Eleventh Circuit recently held that a prisoner bringing a retaliation claim under § 1983 must present evidence of a "retaliatory animus" on the part of the accused defendant in order to establish causation and survive a motion for summary judgment by that defendant. O'Bryant v. Finch, 637 F.3d 1207, 1219-20 (11th Cir. 2011) (per curiam); see also Harris, 65 F.3d at 916 (affirming summary judgment for the defendant because the plaintiff "produced nothing beyond his own conclusory allegations, suggesting that [the defendant's] actions in compliance with the strip search regulations were motivated by retaliatory animus").

Here, Plaintiff has offered nothing more than his own conclusory allegations from his amended complaint that Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton used "retaliation and [retaliatory tactics]" to intentionally deny Plaintiff access to the administrative grievance procedure. (Doc. no. 7, ¶ 40.) As an initial matter, Plaintiff has failed to provide any specific examples of the alleged "retaliation

---

[9]In Harris, the Eleventh Circuit reversed the district court's decision granting summary judgment where the prisoner plaintiff submitted corroborating affidavits from fellow prisoners that stated a prison official commented that he filed DRs against the plaintiff, at least in part, in retaliation for prior litigation. Harris, 65 F.3d at 917. As discussed, *infra*, Plaintiff has submitted no such affidavits in this case.

and [retaliatory tactics]." Additionally, Plaintiff has offered no evidence, through affidavits or otherwise, to show that any of these Defendants were subjectively motivated to retaliate against him for any reason. See Moton v. Cowart, 631 F.3d 1337, 1342 (11th Cir. 2011) (stating that "the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights" in order to establish causation (internal quotation marks omitted)). Mere allegations cannot carry Plaintiff's burden at summary judgment. See Morris, 663 F.2d at 1034. Therefore, Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton are entitled to judgment as a matter of law regarding Plaintiff's allegation that they retaliated against him by denying him access to the administrative grievance procedure.

Similarly, as to Defendant Cameron, Plaintiff has, once again, provided nothing beyond his own conclusory statements in his amended complaint to support his claim that Defendant Cameron retaliated against him for attempting to obtain grievance forms by refusing him access to those forms, and by issuing a DR against him for improper telephone use. (Doc. no. 7, ¶¶ 28-30.) Additionally, Defendants have provided a sworn affidavit by Defendant Cameron in which she states that: 1) she did not, and could not, deny Plaintiff access to grievance forms because she had no authority to distribute those forms; and 2) Plaintiff was given a DR for improper telephone use because, upon examining the call report list, Defendant Cameron discovered that Plaintiff had violated facility policy by making a call that had not been approved by staff. (Doc. no. 27, Cameron Aff. ¶¶ 4, 7-8.) Thus, Defendants have demonstrated that Defendant Cameron's actions were reasonably related to legitimate penological objectives, and, Plaintiff has once again failed to demonstrate any

"retaliatory animus" on the part of the alleged wrongdoer. See Harris, 65 F.3d at 916; O'Bryant, 637 F.3d at 1219-20.

Additionally, assuming for the sake of argument that Plaintiff did demonstrate that Defendant Cameron had the required "retaliatory animus," the record shows that Defendant Cameron would have taken the same disciplinary action regarding Plaintiff's improper telephone use in the absence of Plaintiff trying to obtain grievance forms. See Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008) (stating "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . . summary judgment."). Here, Defendant Cameron has clearly stated in a sworn affidavit that she could not provide Plaintiff with the grievance forms he sought, and that Plaintiff was given a DR for violating facility policy. Thus, Plaintiff would have suffered the same adverse action if he had not been attempting to access grievance forms. As such, Defendant Cameron is entitled to judgment as a matter of law regarding Plaintiff's allegations of retaliation against her, and her request for summary judgment should be **GRANTED**.

### D. Plaintiff's Due Process Claims

Plaintiff also alleges that his due process rights were violated in that he was denied access to the administrative grievance procedure by Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton. (Doc. no. 7, ¶¶ 32, 37, 40.) Additionally, Plaintiff claims that Defendants Yancy, Carey, Smith, and Romero hear false claims against inmates knowing that the claims are false. (Id. ¶ 42.)

As to Plaintiff's claim that his due process rights were violated by being denied

12

access to the administrative grievance procedure, it is well established that the Constitution does not entitle prisoners in either state or federal facilities to grievance procedures. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) (finding that a federal inmate's constitutional rights are not compromised by a prison's refusal to entertain his grievances); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (*per curiam*), is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the

13

plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

Here, Plaintiff alleges, without further detail, that Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton denied Plaintiff access to the administrative grievance procedure. (Doc. no. 7, ¶¶ 32, 37, 40.) However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Defendants Carey, M. Brock, Smith, Mrs. Brock, Yancy, Jordan, Thompson, Romero, and Singleton are entitled to judgment as a matter of law regarding Plaintiff's allegations that they violated his due process rights by denying him access to the administrative grievance procedure. As there are no further remaining claims against Defendants M. Brock, Mrs. Brock, Jordan, Thompson, and Singleton, their request for summary judgment should be **GRANTED**.

The Court now turns its attention to Plaintiff's allegation that Defendants Yancy, Carey, Smith, and Romero hear false claims against inmates knowing that the claims are false. (Doc. no. 7, ¶ 42.) Although Plaintiff does not directly state as much, the Court presumes that Plaintiff is once again attempting to claim that his due process rights were violated by being placed in the SHU for thirty days as a result of being found guilty of the

14

allegedly false charge of engaging in/ encouraging the Kosher meal demonstration.

Here, Plaintiff has failed to establish that his stay in the SHU deprived him of a liberty interest, and thus, violated his due process rights. There are two circumstances in which a prisoner can be deprived of a liberty interest beyond that already associated with his confinement. See Sandin v. Connor, 515 U.S. 472, 484 (1995). First, a liberty interest may arise if a prisoner's liberty is restrained in a way that exceeds the sentence imposed by the courts. Id. Second, a liberty interest may be created by giving prisoners certain benefits, the deprivation of which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Here, Plaintiff does not suggest that his stay in the SHU resulted in a sentence exceeding that imposed by the court of conviction. Of course, it is true that the Eleventh Circuit has "assumed" that a disciplinary sanction of twelve months of solitary confinement triggers procedural due process protections under Sandin. See Williams v. Fountain, 77 F.3d 372, 374-75 (11th Cir. 1996); but see Wagner v. Hanks, 128 F.3d 1173, 1175-76 (7th Cir. 1997)(Posner, J.) ("[T]he right to litigate disciplinary confinements has become vanishingly small . . . when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty."). However, the instant case is easily distinguished from Williams because Plaintiff has not alleged that he was sanctioned for twelve months of solitary confinement- rather he alleges

15

that he improperly spent a mere thirty days in segregation.[10]

Furthermore, Plaintiff has presented no allegations that his time spent in SHU involved the deprivation of benefits which imposed atypical and significant hardships on him in relation to the incidents of normal prison life at MCF. Thus, Plaintiff has failed to demonstrate that his due process rights were violated as a result of his thirty-day stay in segregation.

Plaintiff has also failed to establish that his due process rights were violated during the course of his disciplinary proceedings, which resulted in his 30-day stay in SHU. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005) (per curiam); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due

---

[10]In any event, as discussed, *infra*, the Court finds that Plaintiff's due process rights were not violated during the course of his disciplinary proceedings.

16

process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, Plaintiff has failed to allege, must less present evidence, that he was not provided the three elements of minimum due process as established in Wolff. In fact, Plaintiff states in his amended complaint that Defendant Smith provided him with notice of the charges against him on February 24, 2009, and that Defendant M. Brock advised him of his rights in advance of his disciplinary hearing, which was held on March 9, 2009. (Doc. no. 7, ¶¶ 21-23.) The Court also finds that there was "some evidence" to support the decision

17

of Defendant Carey that Plaintiff was guilty of engaging in/ encouraging the Kosher meal demonstration- such as Plaintiff's admission that he retained his Kosher meal card and the records indicating that card was scanned at the time of the demonstration. (See doc. no. 21, p. 7, Carey Aff. ¶¶ 3-5.) Additionally, Plaintiff's allegation that Defendants Yancy, Carey, Smith, and Romero "hear[] false charges against inmates knowing they are false" also fails. Here, Plaintiff appears to be seeking relief on behalf of other, unnamed inmates who have had false charges made against them, resulting in disciplinary hearings, even though the above-named Defendants knew the charges were false. However, a prisoner proceeding *pro se*, as Plaintiff is in this proceeding, cannot represent the interests of other prisoners. See Wallace v. Smith, 145 Fed. App'x. 300, 302 (11th Cir. 2005) (*per curiam*). Therefore, Defendants Yancy, Carey, Smith, and Romero are entitled to judgment as a matter of law regarding Plaintiff's allegation that they knowingly hear false charges against inmates at MCF. As there are no further remaining claims against these Defendants, their request for summary judgment should be **GRANTED**.

### E. Supervisory Liability

Finally, the Court finds that Defendant Wells is entitled to judgment as a matter of law. While Plaintiff names Defendant Wells in his amended complaint, he does not allege any wrong doing against Defendant Wells. (See doc. no. 7.) In fact, the only mention of Defendant Wells, other than in Plaintiff's requested relief, addresses his position as Warden at MCF and states that "[Defendant Wells] is responsible for the daily orderly operations of [MCF] and the overall staff, the care, safety, treatment, [and] subsistence of prisoners housed under his custody at [MCF]." (Id. ¶ 5.)

18

As an initial matter, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1322-23 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between any actions of Defendant Wells with any alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against him. On that basis alone, Defendant Wells is entitled to judgment as a matter of law.

Additionally, it is apparent that Plaintiff only names Defendant Wells as a party to this action based on his supervisory capacity. In this regard, the Court notes that Plaintiff has failed to establish a constitutional violation on which to base an allegation of supervisory liability. See Solliday v. Fed. Officers, 413 F. App'x 206, 209-10 (11th Cir. 2011) (per curiam) (holding that plaintiff could not establish supervisory liability due to her failure to establish an underlying constitutional violation).

Moreover, if Plaintiff established a constitutional violation, Plaintiff's claim against Defendant Wells in his supervisory position would fail because "[i]t is well established in

19

this circuit that supervisory officials are not liable under [ *Bivens* ] for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (citations omitted). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As stated, *supra*, Plaintiff has not made any allegations against Defendant Wells, let alone that he was personally involved with Plaintiff's disciplinary proceedings, the alleged violation of Plaintiff's equal protection rights, the alleged acts of retaliation against Plaintiff, or Plaintiff's alleged denial of access to the administrative grievance procedure.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Wells and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[11] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"

---

[11] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be <u>obvious, flagrant, rampant and of continued duration</u>, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendant Wells to establish a "causal connection." Indeed, as stated, *supra*, Plaintiff has established no constitutional violation to which a "causal connection" could be established. Accordingly, Defendant Wells's request for summary judgment should be **GRANTED**.[12]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' first motion for summary judgment (doc. no. 21), as well as their "Supplemental Motion for Summary Judgment" (doc. no. 27), be **GRANTED**, that an appropriate final judgment be **ENTERED** in favor of all Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 14th day of July, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[12]Additionally, Defendants argue that Plaintiff's claims are barred by the doctrine established in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), and that the Court lacks jurisdiction over Plaintiff's claims under Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008). (Doc. no. 21, pp. 9-12.) The Court's decision on the merits pretermits consideration of these additional arguments.

21